UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOSEPH PARSLEY,                      )
                                      )
        Petitioner,              )
                                      )
v.                                    ) Civil No. 08-88-P-H
                                      ) Crim. No. 05-86-P-H
UNITED STATES OF AMERICA,        )
                                      )
        Respondent.            )

**PROPOSED FINDINGS OF FACT**
**AND**
**RECOMMENDED DECISION**

On March 19, 2009, I held an evidentiary hearing on Joseph Parsley's 28 U.S.C. § 2255

motion.  The hearing was limited to the evidentiary issue identified by the Court in its Order

Affirming in Part and Remanding in Part an earlier recommended decision I had entered.  (See

Doc. No. 25.)  That evidentiary issue in dispute requires a determination of whether or not

Parsley's trial counsel failed to advise him about the possibility of proceeding with an open plea

and leaving the drug quantity determination for the presentence investigation report preparation

process and sentencing proceeding.  (Pet's Supp. Br. at 2, Doc. No. 32.)   In the event the Court

determines that counsel failed to advise Parsley that he had an opportunity to plead guilty

without any plea agreement, reserving the opportunity to contest drug amount, the Court must

then determine whether that failure rose to the level of ineffective assistance of counsel.  At the

evidentiary hearing I heard testimony from three individuals: Joseph Parsley, the movant,

William Maselli, Parsley's trial attorney, and Dan Perry, the Assistant United States Attorney

(AUSA) who prosecuted Parsley.  I now recommend the Court adopt the following proposed

findings of fact and deny Parsley's 28 U.S.C. § 2255 motion.

**DISCUSSION**

*The Remand*

Judge Hornby entered the following order on my recommended decision on Parsley's 28

U.S.C. § 2255 motion:

> Upon de novo review of the Magistrate Judge's Recommended Decision
> (Docket Item 20) and all the pleadings in the case, I **Affirm** all her findings and
> conclusions except one. As she recognizes,
>
>> [I]f the sentencing judge believes that a further reduction in sentence
>> would have occurred had Parsley pled open [ *i.e.,* without a plea
>> agreement], then this record would provide a basis for a 28 U.S.C. § 2255
>> evidentiary hearing on the questions of whether or not counsel failed to
>> advise Parsley about the advisability of proceeding with an open plea and
>> leaving the drug quantity determination for the PSI preparation process
>> and sentencing proceeding. The factual dispute is whether or not
>> [Attorney] Maselli advised Parsley to go to trial as the only way to dispute
>> precise drug quantities or whether Maselli was acquiescing to Parsley's
>> insistence on a trial. With the United States clearly not interested in a plea
>> agreement that lowered Parsley's drug quantity exposure, the Government
>> would have been in a position to generate the same evidence on drug
>> quantity at sentencing that it did at trial. It does not seem likely that the
>> one point for acceptance of responsibility was going to be recommended
>> by the Government on the basis of an open plea so the question boils down
>> to whether or not this Court would have further reduced Parsley's sentence
>> had he entered an open plea. The prospect of this relief does not appear
>> obvious or apparent to me from the record alone, although the United
>> States is a little too dismissive of the idea that the Court may not have
>> wound up at a sentence lower than 87 months. However, if the Court
>> determines that-had Parsley "accepted responsibility" by entering an open
>> plea-the sentence would have been reduced, then a factual determination
>> would have to be made regarding the advice Maselli gave to Parsley prior
>> to trial.
>
> Recommended Decision at 9-10.  As the sentencing judge, I conclude that
> acceptance of responsibility and the lower advisory Guideline range might well
> have affected my sentence even under a Booker analysis, and the fact that I
> departed downward one level under the Guidelines for overstated Criminal
> History does not … alter that conclusion.
>
>> Consequently, I **Remand** the matter to the Magistrate Judge for an
> evidentiary hearing on the issue she describes.

Parsley v. United States, Civ. No. 08-88-P-H, 2008 WL 5273320, 1  (D.Me. Dec. 18, 2008).

2

*Proposed Findings of Fact[1]*

In 2005 Joseph Parsley was indicted, along with ten other individuals, in connection with a drug conspiracy involving the sale and distribution of marijuana. Ultimately Parsley was the only apprehended defendant who elected to proceed to trial, the other defendants either pled guilty or were not brought into custody. Parsley essentially had four options regarding the disposition of his criminal case: (1) proceed to trial; (2) plead guilty with a "plea agreement" pursuant to which the Government would stipulate to a particular drug quantity; (3) plead guilty pursuant to an "open plea," admitting guilt to whatever was alleged and hoping for the best; or (4) plead guilty, but reserving the right to contest the amount of drugs properly attributable to his role in the conspiracy and have an evidentiary hearing limited solely to the issue of drug quantity.

This 28 U.S.C. § 2255 hearing focused primarily upon the last alternative. Parsley admits that he understood the first three options, but claims his attorney never explained the fourth option to him. According to Parsley if he had known that option four existed, he would have pled guilty and never put the United States to its proof at a jury trial. Thus, reasons Parsley, his attorney's failure to advise him of the existence of option four was the sole reason why he did not receive an acceptance of responsibility deduction from his offense level that would have resulted, ultimately, in a shorter sentence of incarceration.

Parsley was initially represented by Lawrence M. Fisher, an attorney from New York City, who was retained by Parsley's family. Fisher retained William Maselli to act as local counsel. While Fisher attempted to secure a favorable plea agreement with the United States,

---

[1]     The court is appreciative of the fine work done by the Cumberland Legal Aid Clinic on Parsley's behalf. In addition to filing pleadings on Parsley's behalf, James LaLiberty represented Parsley at the evidentiary hearing under the attentive supervision of Attorney E. James Burke.

Parsley became dissatisfied with his representation.  Parsley felt that the drug quantities allegedly attributable to his conduct were inflated and that Fisher should have been able to negotiate a more favorable deal.  When it became apparent that a more favorable deal was not forthcoming, Parsley fired Fisher and retained Maselli to represent him.  Parsley paid Maselli in full a flat fee of $15,000, well before the commencement of trial.

Maselli has been a criminal defense attorney for twenty years and has practiced in both state and federal courts.  His entire practice is criminal in nature and he has been involved in approximately thirty-five to forty federal criminal trials.  Maselli understood that Parsley had hired him to "fight" the case because he was dissatisfied with Attorney Fisher's representation and he wanted Maselli to represent him specifically for the purpose of trying the case.  Maselli began his representation by persuading the trial judge to reopen the period for filing motions and then filing a motion to suppress.  Following denial of the suppression motion, the matter was scheduled for trial a couple of times, but it was continued for various reasons.  Maselli believes that if he had billed Parsley on an hourly basis he would have charged between $75,000 and $100,000 based upon the actual work he expended in trial preparation and on pretrial motions.  Parsley's suggestion that Maselli went forward with the jury trial in order to earn a fee larger than the $15,000 paid has no substance.

Attorney Maselli agrees that he and Parsley had very few conversations about attributable drug quantity, particularly in regard to going to trial for the sole purpose of fighting drug quantity.  According to Maselli, Parsley hired him because he wanted a jury trial.  Parsley never entertained the option of pleading guilty to an open plea without obtaining any concession from the prosecution, although he clearly understood he could plead guilty if he wanted.  He preferred to take a gamble with a jury trial rather than admit his guilt when he did not agree with the

prosecution's position regarding drug quantity.  As a matter of trial strategy Maselli concluded that simply fighting drug quantity would have been insane.  Admitting guilt to the jury would have guaranteed a guilty verdict and would have done little to improve Parsley's position at sentencing.  Maselli's trial strategy, admittedly an unsuccessful one, was to attack the credibility of the co-operating witnesses and to try to make Parsley look relatively good.

Accepting Maselli's testimony that he had a client who had adamantly rejected the United States' plea offer and had indicated he wanted to roll the dice with a jury, Maselli's decision regarding the appropriate trial strategy certainly fell within the range of acceptable alternatives for a criminal defense attorney in his situation. Parsley is not contending that he wanted or expected Maselli to concede guilt and argue drug amounts at his jury trial or that Maselli ever suggested to him that such a strategy was the appropriate way to proceed.

The evidentiary hearing also established that Parsley understood fully his option of pleading guilty with a stipulation from the United States regarding drug quantity, but he refused to accept Maselli's advice that "there was no such thing as a plea agreement in federal court." Parsley felt that Attorney Fisher, and then Attorney Maselli, should have been able to negotiate a "deal" with the United States whereby in exchange for pleading guilty Parsley would be guaranteed a particular sentence and lower amounts of drugs would be attributed to his role in the offense.  Parsley had apparently had some experience in a state court criminal justice system and believed such "deals" were possible in the federal system.  Maselli's advice that there was no such thing as a 'plea agreement' in federal court was essentially accurate and certainly did not amount to ineffective assistance of counsel.  Attorney Maselli was not going to be able to obtain the type of plea agreement that Parsley wanted or expected.

As to option four, the possibility of pleading guilty, but reserving the right to have a full evidentiary hearing on the issue of drug quantity, I am satisfied that this option was briefly discussed by Maselli and Parsley, based on their joint testimony.  Maselli said he told Parsley that the option of pleading guilty but reserving the right to challenge drug quantity at an evidentiary hearing was not a good option because it could endanger his acceptance of responsibility points and result in the same sentence he would receive after a jury trial. According to Maselli he does not ever remember recommending to any client that he plead guilty and reserve the right to contest drug quantity.  It was apparent at the hearing that Maselli did not favor this option and did not spend a lot of time with Parsley discussing it.  Parsley indirectly confirmed that some conversation took place because he recalls that Maselli told him that if he did an "open plea" the United States would convince the Court of the drug amounts it had sought by way of the stipulation in any event.  Parsley specifically recollects that Maselli told him the prosecution would "get its drug amounts."  This sounds to me like the option was discussed between Attorney Maselli and Parsley, Maselli recommended not proceeding in that fashion, and the option was quickly rejected.  Given the evidence that was ultimately developed during the trial of this case, I cannot find that Maselli's advice regarding the probability of success of an evidentiary challenge to drug quantity or the possibility of loss of acceptance of responsibility points if that avenue was pursued was ineffective assistance of counsel under the Strickland standard.  No experienced criminal defense attorney would want his client to plead guilty and then mount a full blown evidentiary challenge to the drug quantities without being aware of the limited probability of success, given the burden of proof at a sentencing hearing.  The risk of losing acceptance of responsibility credit existed and counsel had the obligation to inform Parsley of that fact.

6

Based upon Maselli's own testimony I am also satisfied that Parsley did not fully believe the advice he had been given.  It appears to me that Parsley's mindset prior to trial was that the United States should have offered him a better deal and that if they weren't going to give him a deal he was going to put them to their proof.  This mindset is confirmed by the meeting that was held with Assistant United States Attorney Dan Perry prior to the trial.  Perry described the meeting as a very intentional "reverse proffer."   Parsley said nothing at the meeting, but Perry put his entire case in front of Parsley, trying to persuade him to plead guilty rather than proceed to trial.  While Perry says his motives were purely altruistic (he did not want Parsley to proceed to trial in the face of what he believed was overwhelming evidence without fully comprehending the consequences), I find it is also apparent that the United States, for its own reasons, wanted to avoid a trial if at all possible.  In any event I accept AUSA Perry's testimony that he told Parsley that if the only reason he was having a trial was to contest drug quantity, it was foolish to do so. He could always contest the drug quantity at a sentencing hearing according to the advice Perry gave to Parsley.  Nevertheless, after the meeting Parsley remained resolute in his determination to proceed to trial.

I also accept Parsley's testimony that he was confused during the "reverse proffer."  I further find, based on Maselli's testimony, that Perry's advice concerning contesting the drug quantity at a sentencing hearing was directly contrary to the advice that Maselli would have given because he testified that he could not remember *ever* recommending that a client follow that course of action for the reasons discussed earlier.  It seems reasonable to conclude that while AUSA Perry told the defendant about the option of pleading guilty and contesting drug quantity, Parsley did not necessarily view that as a viable option based on what Maselli had told him. Neither Maselli's file nor his testimony during the evidentiary hearing supports a finding that he

7

spent a great deal of time discussing this option with Parsley.  In part this appears to be because Parsley made it clear that if he could not get the deal he wanted regarding drug quantity and an agreed sentence, he wanted a jury trial.  Now, with an acute case of buyer's remorse, Parsley says that if only he had known he could have pled guilty and had a hearing in front of a judge on the issue of drug quantity, he would have chosen that option.  I am satisfied that Parsley knew prior to electing to proceed to trial that he could have chosen to plead guilty and contest drug quantity, but that his attorney discouraged him from proceeding in that fashion.  Hearing the prosecutor tell him that such an option was viable probably only served to increase his resolve not to proceed in that fashion, but rather to take his chances with the jury.

Whether Attorney's Maselli's assessment that contesting drug quantity during a full blown evidentiary hearing at the time of sentencing would have endangered the acceptance of responsibility points is, of course, the great unknown.  However, to the extent the first prong of Strickland v. Washington, 466 U.S. 668 (1984) relies upon a *factual* determination of whether or not counsel's performance fell below an objective standard of reasonableness, I do not believe that it did.  Maselli's counsel to plead guilty to the lowest amount to which the United States would stipulate was sound advice and would have virtually guaranteed that Parsley receive the benefit of accepting responsibility for his conduct.  I find that Maselli never told Parsley that the only way to contest drug quantity was to have a jury trial.  I find the jury trial occurred because Parsley insisted upon it in spite of advice to the contrary from Fisher, Maselli, and Perry.

### *Recommended Decision*

The First Circuit summarized the standard for 28 U.S.C. § 2255 ineffective assistance claims in United States v. De La Cruz:

> The essence of an ineffective-assistance claim is that counsel's
> unprofessional errors so upset the adversarial balance between defense and

prosecution that the trial was rendered unfair and the verdict rendered suspect."
Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). In order to prevail, a
defendant must show both that counsel's representation fell below an objective
standard of reasonableness and that there exists a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding would have been
different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). In other
words, a defendant must demonstrate both seriously-deficient performance on the
part of his counsel and prejudice resulting there from. In this case, Defendant has
demonstrated neither.

Although the Supreme Court in Strickland discussed the performance
prong of an ineffectiveness claim before the prejudice prong, the Court made
clear that "there is no reason for a court deciding an ineffective assistance claim to
approach the inquiry in the same order or even to address both components of the
inquiry if the defendant makes an insufficient showing on one." Id. at 697. As the
Court noted: "If it is easier to dispose of an ineffectiveness claim on the ground of
lack of sufficient prejudice, which we expect will often be so, that course should
be followed." Id

514 F.3d 121, 140 (1st Cir. 2008).

This matter was remanded to me for an evidentiary hearing on the issue I had described

in my earlier recommended decision.  Judge Hornby concluded "that acceptance of responsibility

and the lower advisory Guideline range might well have affected [his] sentence even under a

Booker analysis, and the fact that [he] departed downward one level under the Guidelines for

overstated Criminal History" did  not "alter that conclusion." Parsley,  2008 WL 5273320 at 1.

When the evidentiary dispute is analyzed through the lens of the remand order in

conjunction with my proposed findings of fact, I do not question the possibility that one

approach to the dynamics of this case was for counsel to advise Parsley to plead guilty and to

contest drug quantities during sentencing. See cf. United States v. Rashad, 396 F.3d 398, 403

(D.C. Cir. 2005) ("In sum, the district court erred as a matter of law when it determined [as part

of its ineffective assistance of counsel inquiry that] Rashad was not eligible to plead guilty

because he asserted his innocence to some of the charges against him.").  However, the

testimony at the evidentiary hearing demonstrated that Parsley was convinced, even after the

9

AUSA explained the weight of the evidence against him, that he could not be held accountable for the drug quantities of the conspiracy as a whole.  I conclude based on the testimony at the hearing that it was this assumption on Parsley's part that drove the strategy of this case.  See cf. Oyague v. Artuz, 393 F.3d 99, 107 (2d Cir. 2004) ("It is simply improbable that Oyague would not have pled guilty but for his counsel's alleged unprofessional performance. The record, by way of the evidentiary hearing which preceded the plea allocution and Oyague's statements during the plea, reveals strong evidence of Oyague's guilt. When this evidence is viewed together with the nature of the charges against him and the considerable penalties involved, there is no reasonable probability that Oyague would not have accepted the State's plea offer.").

Often ineffective assistance claims arise in the context of the petitioner claiming he wanted a trial but defense did or said something that misled him into entering a guilty plea.  In this case Parsley is arguing the reverse, that Maselli gave him bad advice about proceeding to trial rather than contesting drug quantity at a sentencing hearing.  In the context of the evidence I heard, I find that this case was very much one where Parsley made his own choices about how he wanted to proceed.  He did not like the information he received about the amount of drug quantity that would be attributable to him, but the information he received was essentially accurate.  Maselli's advice that having a full blown evidentiary hearing focused on drug amounts would not improve his position in comparison to pleading guilty to the amount stipulated by the United States was reasonable advice and Maselli's advice that staging such a hearing could endanger acceptance of responsibility adjustments was also a reasonable concern.  Ultimately, it was Parsley's decision to have a jury trial. With respect to Attorney Maselli's performance:

> An attorney's responsibility is to advise his client but the ultimate decision of whether or not to plead guilty lies with the defendant. "It is important to remember that while defense counsel serves as an advocate for the client, it is the client who is the master of his or her own defense ." U.S. v. Teague, 953 F.2d

1525 (11th Cir.1992), <u>citing</u> <u>Mulligan v. Kemp</u>, 771 F.2d 1436 (11th Cir.1985), <u>cert. denied</u>, 480 U.S. 911 (1987). "[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983), <u>citing</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 93, n. 1,  (1977) (BURGER, C.J., concurring); ABA Standards for Criminal Justice 4-5.2, 21-2.2 (2d ed.1980).

<u>Rubio v. United States</u>, No. 8:04 CV 248 T 27MCC, 8:00 CR 196 T 27MSS, 2006 WL 2038537, 4 (M.D. Fla. July 19, 2006); <u>see also</u> <u>Government of Virgin Islands v. Weatherwax</u>, 77 F.3d 1425, 1435 (3d Cir.) ("Some of the decisions deemed "fundamental"-such as a decision whether to plead guilty or to take an appeal-relate directly to the objectives of the representation. <u>Cf</u>. *Model Rules of Professional Conduct* Rule 1.2(a) (1994) (stating that a lawyer must abide by a client's decisions concerning the objectives of representation). While the accused should receive the full and careful advice of her lawyer before entering a guilty plea or taking an appeal, these decisions ultimately must be made by the defendant herself. The lawyer can inform the client of the likely consequences of those decisions, but only the defendant knows whether she prefers to bear those consequences or prefers to accept the costs and consequences of going to trial or filing an appeal.").

I am satisfied in this case that Parsley decided he wanted a jury trial and he rejected the opportunity to plead guilty because he did not like the terms of any prospective plea he might enter.

### Conclusion

Based upon the foregoing I recommend that the Court adopt these proposed findings of fact and deny the motion to vacate.  I further recommend that no certificate of appealability should issue in the event Parsley files a notice of appeal because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

March 27, 2009